# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

KELLY WILLEY, Personal Representative
of the Estate of DANIEL PITTS, Deceased,

                              Plaintiff,

v

LENAWEE COUNTY, a Municipal Corporation,
JAIL COMMANDER DENNIS STEENROD,
ASS'T JAIL COMMANDER JAMES CRAIG,
CORRECTIONS OFFICER JAMES HART, and
STEPHEN STOCKER, MSW.

                              Defendants.

Case No. 2:14-cv-14463
Hon. Nancy G. Edmunds
Magistrate Mona K. Majzoub

---

FIEGER FIEGER KENNEY & HARRINGTON, P.C.
BY:   GEOFFREY N. FIEGER (P30441)
       JAMES S. CRAIG (P52691)
Attorneys for Plaintiff
19390 W. Ten Mile Rd.
Southfield, MI 48075
248.355.5555

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.
BY:   JAMES R. ACHO (P62175)
       KAREN M. DALEY (P60002)
Attorneys for Defendants
33900 Schoolcraft
Livonia, MI 48150
734.261.2400

---

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

NOW COME the Defendants, LENAWEE COUNTY, LIEUTENANT

JAMES CRAIG, CAPTAIN DENNIS STEENROD, CORRECTIONS OFFICER

JAMES HART, and STEPHEN STOCKER, MSW, by and through their attorneys,

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C., and for their Motion for

Summary Judgment, rely upon the Brief in Support of the Motion for Summary

Judgment and Rule 56 of the Federal Rules of Civil Procedure.

     Pursuant to Local Rule 7.1(a), Defendants certify that they attempted to obtain

concurrence in the relief sought, but such concurrence was denied.

                       Respectfully submitted,

                       /s/ *James R. Acho*
                       Cummings, McClorey, Davis & Acho, P.L.C.
                       33900 Schoolcraft Road
                       Livonia, MI  48150
                       (734) 261-2400
                       Attorneys for Defendants
                       Email: jacho@cmda-law.com
                       (P62175)

Dated: March 7, 2016

L:\jar - Jen Richards\Pitts\Renewed MSJ.docx

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

KELLY WILLEY, Personal Representative
of the Estate of DANIEL PITTS, Deceased,

|                                          |                               |
|------------------------------------------|-------------------------------|
|                                          | Case No. 2:14-cv-14463        |
|                        Plaintiff,        | Hon. Nancy G. Edmunds         |
| v                                        | Magistrate Mona K. Majzoub    |

LENAWEE COUNTY, a Municipal Corporation,
JAIL COMMANDER DENNIS STEENROD,
ASS'T JAIL COMMANDER JAMES CRAIG,
CORRECTIONS OFFICER JAMES HART, and
STEPHEN STOCKER, MSW.

                        Defendants.

---

FIEGER FIEGER KENNEY & HARRINGTON, P.C.
BY:   GEOFFREY N. FIEGER (P30441)
        JAMES S. CRAIG (P52691)
Attorneys for Plaintiff
19390 W. Ten Mile Rd.
Southfield, MI 48075
248.355.5555

CUMMINGS, McCLOREY, DAVIS & ACHO, P.L.C.
BY:   JAMES R. ACHO (P62175)
        KAREN M. DALEY (P60002)
Attorneys for Defendants
33900 Schoolcraft
Livonia, MI 48150
734.261.2400

---

## BRIEF IN SUPPORT OF DEFENDANTS' MOTION
## FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

                                                                    <u>PAGE</u>

INDEX OF AUTHORITIES....................................................................... iii

QUESTIONS PRESENTED..................................................................... vii

INTRODUCTION .....................................................................................1

STATEMENT OF FACTS ..........................................................................1

STANDARD OF REVIEW ..........................................................................4

LAW AND ARGUMENT ............................................................................5

   I. DEFENDANTS STEENROD, CRAIG, HART, AND STOCKER ARE
   ENTITLED TO THE DEFENSE OF QUALIFIED IMMUNITY.....................5

   A.   Defendants cannot be held liable because they reasonably relied
   upon the medical judgment of Stocker ...............................................9

   B.  There is no evidence that the individual Defendants acted with
   deliberate indifference .......................................................................11

   C. Daniel Pitts' suicide threat was conditional and lacked
   immediacy..........................................................................................15

   D.  There is no clearly established right to suicide prevention measures .........17

   II. PLAINTIFF'S CLAIM FOR MUNICIPAL LIABILITY AGAINST
   LENAWEE COUNTY SHOULD BE DISMISSED.........................................19

   A.   A determination that the individual Defendants did not violate
   Plaintiff's rights resolves the claim against the County as well.......................19

   B.  Plaintiff has failed to allege a valid claim for municipal liability
   against the County ...............................................................................19

i

III. PLAINTIFF'S STATE LAW CLAIMS SHOULD BE DISMISSED BECAUSE DEFENDANTS ARE ENTITLED TO GOVERNMENTAL IMMUNITY................................................................................20

A.  The claims against the County are barred by the application of governmental immunity.....................................................................20

B.  Governmental immunity bars Plaintiff's state tort claims against Defendants Craig, Steenrod, Hart, and Stocker.................................................21

CONCLUSION ...................................................................................25

CERTIFICATE OF SERVICE

# INDEX OF AUTHORITIES

**PAGE**

**Cases**

*Andrews v. Siegel*, 929 F.2d 1326 (8th Cir. 1991)......................................................9

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ...............................................................17

*Bell v. Wolfish*, 441 U.S. 520, 535 (1979) ................................................................5

*Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)...........................................11

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ..................................................5

*City & County of San Francisco, Calif v. Sheehan*, 135 S. Ct. 1765, 1776 (2015) ...............................................................................................17

*City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ........................................19

*Comstock v. McCrary*,  273 F. 3d 693, 702 (6th Cir. 2001) .....................................7

*Costa v. Community Emergency Med Servs, Inc*, 475 Mich. 403, 411; 716 N.W.2d 236 (2006) ...................................................................................23

*Danese v. Asman*, 875 F.2d 1239, 1245 (6th Cir. 1989)............................................8

*Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996)......................20

*Ellison v. Garbarino*, 48 F.3d 192, 194 (6th Cir.1995) .............................................6

*Estate of Novack v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) ...................9

*Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002) ............................6

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994).........................................................7

*Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993)....................20

*Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991) .........................................11

iii

*Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005) ...................................7, 11

*Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1990)...............................................8

*Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) ..................................................6

*Hays v. Jefferson*, 668 F.2d 869, 872 (6th Cir. 1982)..............................................12

*Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011)..............................................10

*Horn v. Madison Cty Fiscal Ct*, 22 F.3d 653, 660 (6th Cir. 1994)...........................8

*Hunter v. Bryant*, 502 U.S. 224, 229 (1991)...........................................................6

*Isabella Co. v. Michigan*, 181 Mich. App. 99, 105; 449 N.W.2d 111 (1989).........21

*Jackson v. Cty of Saginaw*, 458 Mich. 141, 148; 580 N.W.2d 870 (1998) .............21

*Johnson v. Doughty*, 433 F.3d 1001, 1010–11 (7th Cir. 2006) ...............................10

*Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005)..............................................5

*Jones v. Pramstaller*, 678 F. Supp. 2d 609, 623 (W.D. Mich. 2009)......................24

*Jones v. Reynolds*, 438 F.3d 685, 698 (6th Cir. 2006)..............................................19

*Knott v. Sullivan*, 418 F.3d 561 (6th Cir. 2005)........................................................13

*Leach v. Shelby Cty Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)..........................11

*Luck v. Rovenstine*, 168 F.3d 323, 327 (7th Cir. 1999) ...........................................12

*Malley v. Briggs*, 475 U.S. 335, 341 (1986) .............................................................6

*Miller v. Calhoun Cty*, 408 F.3d 803, 817 (6th Cir. 2005) ......................................13

*Minix v. Canarecci*, 597 F.3d 824, 830–34 (7th Cir. 2010) .....................................8

*Monell v. Dep't of Social Services,* 436 U.S. 658, 690 (1978) ................................20

iv

*Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir.2001)...................................5

*Payton v. Detroit*, 211 Mich. App. 375, 392; 536 N.W.2d 233 (1995)..................21

*Rakowski v. Sarb*, 269 Mich. App. 619, 635–636; 713 N.W.2d 787 (2006)...........25

*Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012) ...................................17

*Rizzo v. Goode*, 423 U.S. 362, 371 (1976)...............................................11

*Ronayne v. Ficano*, 173 F.3d 856 (6th Cir. 1999) ......................................9

*Russell v. Dep't of Corrections*, 234 Mich. App. 135, 137; 592
    N.W.2d 125 (1999) ...........................................................22

*Sanderfer v. Nichols*, 62 F.3d 151, 155 (6th Cir. 1995) ............................9

*Saucier v. Katz*, 533 U.S. 194 (2001) .........................................6

*Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000) ..........................19

*Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) ...............................12

*Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017–20 (9th Cir.2010) ...............8

*Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009) ......................................9

*Stemler v. City of Florence*, 126 F.3d 856 (6th Cir. 1997) .........................7

*Summers v. Detroit*, 206 Mich. App. 46, 48; 520 N.W.2d 356 (1994) ..................21

*Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015) ......................................17

*Vermilya v. Dunham*, 195 Mich. App. 79; 489 N.W.2d 496 (1982) ......................22

*Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001).........................5

*Xu v. Gay*, 257 Mich. App. 263, 271; 668 N.W.2d 166 (2003)...............................25

**Statutes**

M.C.L. 691.1407(1) ................................................................20

M.C.L. 691.1407(2) ................................................................21

**Other Authorities**

Black's Law Dictionary, 6th Ed. 1990 ...................................22

**Rules**

Fed. R. Civ. P. 56(c) ...............................................................4

## <u>QUESTIONS PRESENTED</u>

**I. SHOULD THE CONSTITUTIONAL CLAIMS AGAINST DEFENDANTS STEENROD, CRAIG, HART, AND STOCKER BE DISMISSED WHERE THESE DEFENDANTS ARE ENTITLED TO THE DEFENSE OF QUALIFIED IMMUNITY?**

Plaintiff says: "No"
Defendants say: "Yes."

**II. SHOULD PLAINTIFF'S CLAIM FOR MUNICIPAL LIABILITY AGAINST LENAWEE COUNTY BE DISMISSED WHERE THE DECEDENT'S CONSTITUTIONAL RIGHTS WERE NOT VIOLATED BY THE INDIVIDUAL DEFENDANTS AND WHERE PLAINTIFF HAS FAILED TO ALLEGE A VALID CLAIM AGAINST THE COUNTY?**

Plaintiff says: "No"
Defendants say: "Yes."

**III. SHOULD PLAINTIFF'S STATE LAW CLAIMS BE DISMISSED WHERE DEFENDANTS ARE ENTITLED TO GOVERNMENTAL IMMUNITY?**

Plaintiff says: "No"
Defendants say: "Yes."

## INTRODUCTION

This case arises out of the suicide of Daniel Pitts while incarcerated in the Lenawee County Jail. (Complaint, Ex. 1). As a result of Pitts' death, Kelly Willey, Pitts' mother and personal representative of his estate, filed a First Amended Complaint against Lenawee County, Capt. Steenrod, Lt. Craig, Sgt. Officer Hart, and Stocker. (Ex. 1). The First Amended Complaint alleges: Count I – Deliberate Indifference Stephen Stocker MSW; Count II – Deliberate Indifference Officers Hart, Craig, and Steenrod; Count III – Deliberate Indifference Lenawee County; Count IV– Gross Negligence Officers Hart, Steenrod, Craig and Stocker. (Ex. 1).

## STATEMENT OF FACTS

### Pitts' Incarceration and Initial Evaluation

On January 4, 2013, Pitts was arrested and charged with ten counts of First Degree Criminal Sexual Conduct, arising out of allegations that he molested his 15-year-old daughter. (1/3/13 Warrant, Ex. 2).[1] Upon arrival at the Jail, Pitts was placed on suicide watch and a psychological assessment was requested. (Request, Ex. 4).

On January 7, 2013, Defendant Stephen Stocker, Lenawee County's mental health counselor, conducted an evaluation of Pitts to assess his mental status and suicidality. (1/7/13 Jail Contact Note, Ex. 5). Stocker concluded that Pitts could be removed from suicide watch status, based upon Pitts "denying active suicidal or

---

[1] On July 20, 2013, Pitts was charged with 16 additional counts of First Degree CSC, arising out of the same circumstances. (7/20/13 Warrant, Ex. 3).

1

homicidal ideations, plans or intent," and because Pitts signed a "Contract for Safety," whereby he acknowledged he was not having any active thoughts of suicide and agreed he would immediately contact a mental health worker or corrections officer if he began to have any such thoughts. (Ex. 5; Contract for Safety, Ex. 6).

**Additional Charges and Suicide Threat**

In October of 2013, Detective Dale Sharp was investigating allegations of witness intimidation against Pitts.[2] During the investigation, Sharp spoke with another inmate, Herbert Sanders. It was believed that Pitts approached Sanders to have him intimidate the witnesses in Pitts' CSC case so that it would not go to trial. (Dep. of Craig, Ex. 8, pg. 18). Sanders also told Sharp that Pitts said if his case went to trial, he would try to harm himself. (Ex. 8, pg. 17). Sharp relayed this information to Craig. (Ex. 8, pg. 17).

Craig then approached mental health and informed Stocker of Pitts' alleged suicide threat.[3] (10/16/13 Jail Contact Note, Ex. 9). As a result, Stocker put together a plan for monitoring and treatment of Pitts. (Ex. 9). Stocker's plan included putting Pitts in an isolation cell and monitoring him with at least 30 minute checks starting

---

[2] On October 31, 2013, Pitts was officially charged with three counts of witness intimidation in connection with his CSC case. (10/31/13 Warrant, Ex. 7).

[3] Craig testified he received information regarding the threat from Detective Sharp, however, Stocker's report indicates that Craig received the information from a family member of Pitts. (Ex. 8, pg. 17; Ex. 9). Such a dispute is immaterial, however, since it is admitted that Craig knew about Pitts' alleged suicide threat.

the day before any court appearances, and continuing until a mental health evaluation could be completed. (Ex. 9). Therefore, since Pitts' was scheduled for a preliminary exam on November 19, 2013, Stocker's plan required putting Pitts on suicide watch starting November 18, 2013. (Ex. 9).

**Lenawee County Jail's Razor Policy**

Prior to Pitts' incarceration, the razor policy provided that razors would be issued to male inmates between 7 a.m. and 8 a.m., Monday through Friday. (9/24/03 Razor Policy, Ex. 12). However, in 2011, the policy was changed to allow razors to be passed Sunday through Thursday night, after lockdown.[4] (1/6/13 Lockdown Razor Request Sheet, Ex. 13; Dep. of Steenrod, Ex. 14, pg. 16). This change was made because mornings are typically a very busy time, so "it just made more sense . . . to have it passed at a time that [the Officers] weren't busy." (Ex. 14, pg. 17). Other than the change from morning to evening for razor distribution, the policy remained the same. (Ex. 14, pg. 21). All inmates were entitled to request a razor, except those on suicide watch. (Ex. 14, pgs. 18, 24-25).

**Pitts' Suicide**

On November 12, 2013, Officers James Hart and Danielle Shillingsford passed out razors to those inmates that had made requests, pursuant to jail policy.

---

[4]   Although the amended policy has not been officially adopted, it was verbally ordered by Steenrod and has been followed since 2011. (Ex. 14, pgs. 19-21).

3

(11/12/13 Razor Request Sheet, Ex. 15; Dep. of Hart, Ex. 10, pg. 17). Pitts had requested a razor. (Ex. 15). <u>At that time, Pitts was not on suicide watch and mental health had not suggested that Pitts was a suicide risk or that precautions should be taken</u>. (Ex. 9). As such, Hart passed out a razor to Pitts.

Approximately thirty minutes later, Hart entered A-1 block (where Pitts was housed) to retrieve the razor. Upon arriving at Pitts' cell, Hart noticed a tremendous amount of blood on the walls and floor, with Pitts lying face down on the floor. (Ex. 10, pg. 21). Hart immediately radioed for assistance. (Ex. 10, pg. 21). Hebert, the jail nurse and Shillingsford responded. (Ex. 10, pg. 22; Dep. of Hebert, Ex. 11, pgs. 52-53). When they entered the cell, Pitts was "thrashing about" and saying: "Leave me alone, let me go, it's my time to go." (Ex. 11, pg. 55). The Officers were finally able to restrain Pitts, while the nurse put pressure on his wounds. (Ex. 11, pgs. 55-57). When the EMTs arrived, the Officers turned control of Pitts over to them. (Ex. 11, pg. 60). Pitts was pronounced dead at the hospital at 1:10 a.m.

## STANDARD OF REVIEW

Rule 56(c) provides that summary judgment is appropriate where "there is no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." This standard can be met either by submitting affirmative evidence negating an essential element of the nonmovant's claim, or by demonstrating that the nonmovant's evidence itself is insufficient to establish an

4

essential element of the claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-moving party to make a showing sufficient to establish the existence of an essential element to his claims. *Id*. To satisfy this burden, the nonmovant cannot rest on the pleadings, but must by documentary evidence, set forth specific facts showing that there is a genuine issue for trial.

## LAW AND ARGUMENT

As an initial matter, Plaintiff has alleged that Defendants' actions were in violation of the decedent's Eighth Amendment right to be free from cruel and unusual punishment. (Ex 1, ¶¶ 41-42). However, Eighth Amendment rights do not apply to pretrial detainees. *Watkins v. City of Battle Creek*, 273 F.3d 682, 685 (6th Cir. 2001); *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). It is only the Due Process Clause of the Fourteenth Amendment that guarantees pretrial detainees are not unnecessarily and wantonly subjected to pain by jail personnel. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir.2001).

## I. DEFENDANTS STEENROD, CRAIG, HART, AND STOCKER ARE ENTITLED TO QUALIFIED IMMUNITY.

In the specific context of a § 1983 action, the non-moving party "must demonstrate a genuine issue of material fact as to the following 'two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) [that] the deprivation was caused by a person acting under color of state law.'" *Johnson v. Karnes*, 398 F.3d 868, 873 (6th Cir. 2005)(quoting *Ellison v. Garbarino*,

5

48 F.3d 192, 194 (6th Cir.1995)). As there is no dispute that Defendants in this case acted under color of state law, this Court's inquiry must focus on whether there was an actionable deprivation of a right.

The doctrine of qualified immunity provides that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity ordinarily applies unless it is obvious that no reasonably competent official would have concluded that the actions taken were unlawful. *Ewolski v. City of Brunswick*, 287 F.3d 492, 501 (6th Cir. 2002). Qualified immunity "'gives ample room for mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'" *Hunter v. Bryant*, 502 U.S. 224, 229 (1991)(quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). Qualified immunity applies irrespective of whether the official's error was a mistake of law or a mistake of fact, or a mistake based on mixed questions of law and fact. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

To assess whether an official is entitled to qualified immunity, a two-part analysis is generally used. *Saucier v. Katz*, 533 U.S. 194 (2001).[5] First, the Court

---

[5] While the Supreme Court has since held that this two-step analysis is no longer mandatory, it "continue[s] to recognize that [the *Saucier* protocol] is often beneficial." *Pearson*, 555 U.S. at 236.

6

must determine whether the plaintiff has alleged facts which, when taken in the light most favorable to him, show the defendant's conduct violated a constitutional right. *Id*. at 201. If the violation of a constitutional right cannot be established, "there is no necessity for further inquiries concerning qualified immunity." *Id*. Second, the Court must determine whether the right was clearly established. *Id*.

Plaintiff alleges that Defendants Craig, Steenrod, Hart, and Stocker were deliberately indifferent to the decedent's serious medical needs when they failed to provide him with adequate medical care. The Fourteenth Amendment gives pre-trial detainees a right to adequate medical treatment. *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005). A constitutional claim for inadequate medical care has objective and subjective components. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th Cir. 2005); *Comstock v. McCrary*,  273 F. 3d 693, 702 (6th Cir. 2001). The objective component requires the existence of a "sufficiently serious" medical need. *Farmer*, 511 U.S. at 834. The subjective component requires a plaintiff to show that officials have "a sufficiently culpable state of mind in denying medical care," which is normally defined as "deliberate indifference." *Id.*

Deliberate indifference is a very high standard – a showing of simple negligence or even heightened negligence is not sufficient. *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997); *Grayson v. Peed*, 195 F.3d 692, 695

7

(4th Cir. 1990). The official's state of mind must evince "deliberateness tantamount to intent to punish." *Horn v. Madison Cty Fiscal Ct*, 22 F.3d 653, 660 (6th Cir. 1994). "Knowledge of the asserted serious needs or of circumstances clearly indicating the existence of such needs, is essential to a finding of deliberate indifference." *Id*. Thus, <u>"an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.</u>" *Farmer*, 511 U.S. at 838.

Prison and jail officials need only take reasonable precautions to prevent inmate suicide; they do not insure or guarantee the life of a prisoner. *See Danese v. Asman*, 875 F.2d 1239, 1245 (6th Cir. 1989) ("[N]either the plaintiffs nor the district court cite any cases holding that there exists a clearly established right to . . . suicide prevention facilities"). Even if a prison official has perceived a serious suicide risk, that official "may still prevail if he responded reasonably to the risk, even if the harm ultimately was not averted." *Comstock v. McCrary*, 273 F.3d 693, 706 (6th Cir. 2001) (internal quotation marks and citation omitted); *Minix v. Canarecci*, 597 F.3d 824, 830–34 (7th Cir. 2010) (though inmate committed suicide, it was not shown that the medical staff disregarded any subjective knowledge that the inmate would kill himself—the inmate had denied suicidal thoughts and appeared alert); *Simmons v. Navajo Cnty., Ariz.*, 609 F.3d 1011, 1017–20 (9th Cir. 2010)(detainee's suicide did <u>not</u> give rise to a claim of deliberate indifference even when detainee did not

8

receive daily evaluations as required by suicide prevention policy, had been allowed to collect the gauze he hung himself with, had been downgraded in suicide watch status, and had not been checked on every 15 minutes as required under policy); *Estate of Novack v. Cnty. of Wood*, 226 F.3d 525, 529 (7th Cir. 2000) (no deliberate indifference liability where defendants were told that the decedent was a suicide risk and, after placing him in an observation cell for a couple of days, defendants placed him in the general prison population; defendants took some action, even though it was not successful).

## A.  Defendants cannot be held liable because they reasonably relied upon the professional judgment of the mental health counselor, Stephen Stocker.

"'[P]rison officials who actually knew of a substantial risk to inmate health or safety may be found free from liability if they responded reasonably to the risk, even if the harm ultimately was not averted.'" *Sanderfer v. Nichols*, 62 F.3d 151, 155 (6th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). Non-medical officials, such as the County Defendants, act reasonably when they rely on the judgment of the correctional facility's medical and mental health staff. See *Spears v. Ruth*, 589 F.3d 249, 255 (6th Cir. 2009)(determining that officer was entitled to rely on jail nurse's medical assessment that plaintiff did not need to be transported to the hospital). See also *Ronayne v. Ficano*, 173 F.3d 856 (6th Cir. 1999) ("Supervisory officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care"); *Andrews v. Siegel*, 929 F.2d 1326 (8th Cir. 1991) (officials were

9

entitled to rely on judgment of prison psychiatrist that attacker did not pose serious threat to other inmates because of his mental condition); *Holden v. Hirner*, 663 F.3d 336, 343 (8th Cir. 2011) (holding that prison officials were entitled to rely upon a nurse's medical opinion); *Johnson v. Doughty*, 433 F.3d 1001, 1010–11 (7th Cir. 2006) (finding no deliberate indifference when prison official made sure the medical staff was addressing the issue and deferred to their judgment).

Here, Defendants reasonably relied on the professional judgment of the Jail's mental health professional, Stephen Stocker. On October 16, 2013, based upon the alleged threat by Pitts that he would "kill himself if his case went to trial," Stocker assessed his case and formulated a mental health plan that required Pitts to be put on suicide watch the day before and the day after any scheduled court appearances. (Ex. 9). Based upon Stocker's conclusion that the threat of suicide was contingent on Pitts' case going to trial, Stocker concluded that Pitts was not suicidal at that time. (Dep. of Stocker, Ex. 16, pg. 91). Stocker concluded precautions were necessary around any days Pitts was going to court and not just his trial, "[j]ust to be on the safe side." (Ex. 16, pg. 93). There is absolutely no evidence that any of the Defendants were aware of any other threats or statements from Pitts regarding suicide. As such, Defendants reasonably relied on the assessment of the Jail's mental health professional as to Pitts' mental health status. Such circumstances are insufficient to support a claim for deliberate indifference.

10

**B. <u>There is no evidence the Defendants acted with deliberate indifference</u>.**

Personal liability on any of the Defendants must be based solely on the individual actions of each Defendant in the situation that the Defendant faced. *Gibson v. Matthews*, 926 F.2d 532, 535 (6th Cir. 1991).

> Although it may appear from the facts that [plaintiff] was a victim of the bureaucracy as a whole and that no person took care to see that her situation was dealt with, rather than "passing the buck," this theory cannot suffice to affix personal liability on any of the defendants. If any one of them is to be held liable, it must be based on the actions of that defendant in the situation that the defendant faced, and not based on any problems caused by the errors of others, either defendants or non-defendants.

"[T]he test for deliberate indifference is a subjective test . . . not an objective test for collective knowledge." *Gray v. City of Detroit*, 399 F.3d 612, 616 (6th Cir. 2005). Therefore, the focus must be on the action of each Defendant in turn.

**<u>Captain James Steenrod</u>.** To establish personal liability in a § 1983 action, plaintiff must show that the individual defendant was personally responsible for the deprivation of a constitutional right. *Id*. A defendant cannot be personally liable under a theory of respondeat superior – officials can only be personally liable for their own unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Leach v. Shelby Cty Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984).

Liability of supervisory personnel must be based on more than merely the right to control employees and cannot be based on simple negligence. *Bellamy*, 729

11

F.2d at 421; *Hays v. Jefferson*, 668 F.2d 869, 872 (6th Cir. 1982). In order for liability to attach, Plaintiff must prove that Steenrod did more than play a passive role in the alleged violation or showed mere tacit approval of the alleged misconduct. *Leach*, 891 F.2d at 1246. Plaintiff must show that Steenrod "'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)(quoting *Hays*, *supra* at 874). "At a minimum a plaintiff must show that the [supervisor] at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id*. See also *Leach*, 891 F.2d at 1246; *Bellamy*, 729 F.2d at 421. Furthermore, supervisory liability cannot attach where the allegation is based upon a mere failure to act. *Leach*, 891 F.2d at 1246. Instead, the liability must be based upon active unconstitutional behavior. *Id*.

In this case, Plaintiff has failed to establish any personal involvement of Steenrod. To the contrary, Steenrod testified he never had any interaction with Pitts, and was not aware of Pitts prior to being notified of his suicide. (Ex. 14, pgs. 25-26). Instead, Plaintiff seems to be asserting Steenrod is liable in a supervisory capacity. However, this is not the type of personal involvement required for individual liability in §1983 cases. See *Luck v. Rovenstine*, 168 F.3d 323, 327 (7th Cir. 1999).

Steenrod has been the Lenawee County Jail commander since 1997. (Ex. 14, pg. 3). As commander, he has very limited involvement with the jail population; his

day-to-day activities usually involve budgetary issues, technological issues and contract review. (Ex. 14, pgs. 27-28). Steenrod never had any direct contact with Pitts and was not aware of Pitts' prior mental health evaluations. (Ex. 14, pg. 26). These facts alone are enough to defeat the individual capacity claim. See *Knott v. Sullivan*, 418 F.3d 561 (6th Cir. 2005); *Miller v. Calhoun Cty*, 408 F.3d 803, 817 (6th Cir. 2005). Furthermore, Plaintiff has failed to show that Steenrod either encouraged or participated in the alleged specific acts of misconduct. Plaintiff's allegations of liability are based only on Steenrod's alleged failure to act, which is insufficient.

**Lieutenant James Craig.** Likewise, there is no evidence of deliberate indifference on the part of Craig. Craig is the assistant jail commander at the Jail. His role consists of day-to-day jail operations, supervising sergeants, and supervising the courthouse, bailiffs, deputies and transport officers who work at the courthouse. (Ex. 8, pg. 5). Although Craig was aware that Pitts had been put on suicide watch in January 2013, he was also aware Pitts had been evaluated by mental health at that time and taken off suicide watch thereafter. (Ex. 8, pg. 16).

In October of 2013, Craig was informed that an inmate had told Detective Sharp that Pitts said he would harm himself if his case went to trial. (Ex. 8, pg. 17). As a result, Craig contacted mental health to report the issue and ensure Pitts would be evaluated by Stocker. (Ex. 8, pg. 17). Even after Stocker created a plan for Pitts,

13

Craig notified Stocker that there were concerns Pitts should be evaluated more immediately due to the suicide threats. (Jail Inmate Activity Log, Ex. 17, pg. 2). Such conduct does not support a finding of deliberate indifference. To the contrary, Craig exhibited a concern for Pitts' well-being and made sure steps were being taken so that he would be evaluated by mental health personnel.

**Officer James Hart.**   There is also nothing in the record to suggest that Officer Hart acted with the requisite intent to support a claim of deliberate indifference. On the night in question, Officer Hart passed out the razor to Pitts because his name was on the razor list. (Ex. 10, p. 17-18). At that time, Pitts was not placed on suicide watch. (Ex. 9). Officer Hart had absolutely no knowledge that Pitts had ever made any suicidal remarks. (Ex. 10, p. 18-19). He also had no knowledge that there were any issues regarding Pitts' mental state. (Ex. 10, p. 31). Officer Hart testified in his deposition that he would not hand out a razor to someone that he thought was suicidal. (Ex. 10, p. 16). Officer Hart's actions do not indicate a "deliberateness tantamount to intent to punish" and thus fail to rise to the level of deliberate indifference.

**Stephen Stocker, MSW.**   Stephen Stocker's conduct also does not rise to the level of deliberate indifference. On January 7, 2013, Stocker received a request for a psychological assessment on Pitts and set up an evaluation for the same day. (Ex. 16, pp. 40-41). Stocker interviewed Pitts for about twenty-seven minutes using a

14

standard form that contains a series of questions as a guide for the interview. (Ex. 16, pp. 63, 73). During this evaluation, Pitts denied any history of psychiatric diagnosis, treatment, and any history of psychiatric hospitalization. (Ex. 16, p. 79). After this interview, Stocker concluded that Pitts was not suicidal and took him off suicide watch status. (Ex. 16, p. 81).

On October 16, 2013, Stocker was approached by Lieutenant Craig and informed that Pitts' family members indicated that he had made a threat to commit suicide **if** his case went to trial. (Ex. 16, p. 85).

### C.  Daniel Pitts' suicide threat was conditional and lacked immediacy.

It is important to highlight the fact that Pitts' suicide threat was **conditional** and it lacked immediacy.  It is vital to draw the distinction between the conditional threat and how a jail mental health counselor deals with a conditional threat as opposed to an immediate threat. Pitts told another inmate that **if** his case went to trial, he would try to harm himself. (Ex. 8, p. 17). A conditional threat is distinguishable from a direct threat. MARY E. O'TOOLE, THE SCHOOL SHOOTER: A THREAT ASSESSMENT PERSPECTIVE 7 (2000) (FBI distinguished contingent threat from direct, indirect, and veiled threats) (Exhibit 19). Specifically, individuals who make conditional threats regarding suicide are less likely to actually commit suicide. Michael T. Lambert, Seven-Year Outcomes of Patients Evaluated for Suicidality, 53 PSYCHIATRY Services 92, 93 (2002)(A study of 137 patients who presented with

15

suicidality revealed that the number of serious suicide attempts including completed suicides was significantly higher among patients in the non-contingent group than among those in the contingent group) (Exhibit 20). Stocker's understanding of the situation was only that Pitts made conditional threats that centered on his case going to trial.

Based on this knowledge and understanding of conditional threats, Stocker concluded that Pitts was not immediately suicidal at that time, however, Stocker developed a safety plan of action to address Pitts' contingent suicidal threats regarding trial. (Ex. 16, pp. 86, 91). This plan required Pitts to be put on suicide watch the day before and the day after any scheduled court appearances. (Ex. 9; Ex. 16, p. 89). Furthermore, even though Pitts' contingent threat was made about going to trial, Stocker put precautions around any times that Pitts had a court date to be on the safe side. (Ex. 16, p.  93). Stocker assessed Pitts and his contingent threats and addressed this with a specific plan to protect Pitts. This conduct does not rise to the level of deliberate indifference because it is not so deliberate as to be tantamount to the intent to punish.

The evidence here simply does not show that any of the Defendants deliberately, recklessly, or consciously disregarded the health or safety of Pitts. Rather, the evidence shows that the Defendants took measures to avoid any risk to Pitts' well-being by seeking an assessment from the mental health professional and

16

by planning to follow the plan put in place for Pitts' safety. Under the circumstances, Defendants' response does not amount to a conscious disregard for Pitts' serious medical needs and therefore does not violate his constitutional rights. As such, Defendants are entitled to qualified immunity.

### D.   <u>There is no clearly established right to suicide prevention measures</u>.

"To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)(quoting *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012)). "We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731 (2011). The Supreme Court has instructed courts "not to define clearly established law at a high level of generality." *City & County of San Francisco, Calif v. Sheehan*, 135 S. Ct. 1765, 1776 (2015).

In *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015), the Supreme Court recently held that there was no clearly established right to suicide prevention measures in prisons and emphasized the importance of the "clearly established" prong of qualified immunity. In that case, Barkes was arrested for violating probation, and taken to a Wilmington Delaware Correctional Institution. During intake, a nurse conducted a suicide screening. Barkes disclosed that he had a history of psychiatric treatment and was on medication and that he had attempted suicide in 2003, but

stated that he was not currently thinking about killing himself. Because only two risk factors were apparent, the nurse gave Barkes a "routine" referral to mental health services and did not initiate special suicide prevention measures. Barkes was placed in a cell by himself. The next morning, correctional officers discovered that Barkes had hanged himself with a sheet. His wife sued officials, alleging violation of Barkes' constitutional right to be free from cruel and unusual punishment, by failing to supervise and monitor the nurse.

The Third Circuit held that it was clearly established that an incarcerated individual had an Eighth Amendment "right to the proper implementation of adequate suicide prevention protocols" and that there were material factual disputes. However, the Supreme Court unanimously reversed, finding that the officials were entitled to qualified immunity. The Supreme Court explained that, "[n]o decision of this Court establishes a right to the proper implementation of adequate suicide prevention protocols. No decision of this Court even discusses suicide screening or prevention protocols." *Id.* at 2044. Therefore, even if the Institution's suicide screening and prevention measures had the alleged shortcomings, no precedent would have made clear to the officials that they were overseeing a system that violated the Constitution.

In the present case, Plaintiff is arguing that Defendants are liable for failing to adequately screen the decedent for suicide risks and for failing to implement and/or

18

follow adequate suicide prevention protocols. As the Supreme Court held in *Taylor*, such a right is not clearly established. Accordingly, even if Defendants' conduct was deliberately indifferent, they are entitled to qualified immunity.

## II. PLAINTIFF'S CLAIM FOR MUNICIPAL LIABILITY AGAINST LENAWEE COUNTY SHOULD BE DISMISSED.

### A. A determination that the individual Defendants did not violate the decedent's rights resolves the claim against the County as well.

A determination that none of the individual Defendants violated the decedent's constitutional rights resolves any claim against the County as well. See *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)(determining that "neither [*Monell*] nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm"). See also *Jones v. Reynolds*, 438 F.3d 685, 698 (6th Cir. 2006); *Scott v. Clay County*, 205 F.3d 867, 879 (6th Cir. 2000). Thus, since no constitutional violation by the individual Defendants has been established, Lenawee County cannot be held liable under §1983.

### B. Plaintiff has failed to allege a valid claim of municipal liability against the County.

Although Plaintiff names Lenawee County in the Complaint, Plaintiff fails to assert any allegations specific to the County. It is well-settled that municipalities can be held liable under § 1983 only where the action of the municipality itself can be said to have caused the harm, as when "the action that is alleged to be

19

unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell v. Dep't of Social Services,* 436 U.S. 658, 690 (1978). To attach such liability to the municipality, a plaintiff must allege "a direct causal link between the custom and the constitutional deprivation*," Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 508 (6th Cir. 1996), by injury was incurred because of the execution of that policy. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 363-64 (6th Cir. 1993).

Here, Plaintiff has entirely failed to allege that the decedent's rights were violated due to a policy or custom of Lenawee County, and therefore has failed to meet this requirement. The County cannot be sued merely on the theory that it employed a person or persons who violated Plaintiff's civil rights. *Monell*, 436 U.S. at 691 ("a municipality cannot be held liable solely because it employs a tortfeasor-or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory."). Accordingly, any claims against the County should be dismissed.

## III. THE STATE LAW CLAIMS SHOULD BE DISMISSED BECAUSE DEFENDANTS ARE ENTITLED TO GOVERNMENTAL IMMUNITY.

### A. <u>The claims against the County are barred by governmental immunity</u>.

The governmental tort liability act (GTLA) provides that "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." M.C.L. 691.1407(1). It is well settled that tort actions against a municipality based on the negligence of its officers,

20

occurring while the officer is engaged in a discharge of that function, are barred by the doctrine of governmental immunity. *Isabella Co. v. Michigan*, 181 Mich. App. 99, 105; 449 N.W.2d 111 (1989).

Lenawee County is a municipal corporation entitled to the protection of the statute. *Summers v. Detroit*, 206 Mich. App. 46, 48; 520 N.W.2d 356 (1994). The operation and maintenance of a jail constitutes a governmental function for which a governmental agency is immune from suit. *Jackson v. Cty of Saginaw*, 458 Mich. 141, 148; 580 N.W.2d 870 (1998). Plaintiff alleges Defendants were acting within the scope of their employment at all times pertinent to the Complaint. Thus, the state law claims against the County are barred by governmental immunity.

### B.   Governmental immunity bars Plaintiff's state tort claims against Defendants Steenrod, Craig, Hart, and Stocker.

Under Michigan law, law enforcement officers who allegedly cause an injury during the course of their employment are immune from tort liability if they were acting within the scope of their authority, their agency was engaged in a governmental function, and they were not grossly negligent. M.C.L. 691.1407(2).

In the present case, Defendants were engaged in the detention of the decedent, which is a quintessential governmental function. *Payton v. Detroit*, 211 Mich. App. 375, 392; 536 N.W.2d 233 (1995). There "are few functions more clearly governmental in nature than the arrest, detention, and prosecution, of persons suspected of having committed a crime, and the decisions involved in determining

21

which suspects should be prosecuted and which should be released." *Id.* at 392. Furthermore, governmental immunity embraces all activities that are incidents of operating a jail. See *Russell v. Dep't of Corrections*, 234 Mich. App. 135, 137; 592 N.W.2d 125 (1999). Because Plaintiff is alleging tort liability arising from the decedent's incarceration, Defendants were engaged in a governmental function.

The third element, existence or non-existence of gross negligence, is a determination that can be made as a matter of law if the Court finds that reasonable minds could not differ as to whether the Defendants' conduct constituted gross negligence. See *Vermilya v. Dunham*, 195 Mich. App. 79; 489 N.W.2d 496 (1982). As employees of the County, Defendants are entitled to immunity from tort liability unless Plaintiff can establish that their conduct amounted to "gross negligence," i.e. conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results. "Reckless" is defined as:

> The state of mind accompanying an act, which either pays no regard to its probability or possibly injurious consequences, or which, through foreseeing such consequences, persists in spite of such knowledge. **Recklessness is a stronger term than mere ordinary negligence and to be reckless, the conduct must be such as to evidence disregard of or indifference to consequences, under circumstances involving danger to life or safety to others . . .**

Black's Law Dictionary, 6th Ed. 1990 (emphasis added). Therefore, to establish gross negligence the evidence must demonstrate that "the contested conduct was

22

substantially more than negligent." *Costa v. Community Emergency Med Servs, Inc*, 475 Mich. 403, 411; 716 N.W.2d 236 (2006).

Here, the evidence dispels any notion that the Defendants were grossly negligent as defined by the statute. Plaintiff asserts that Defendants were grossly negligent because they failed to place Pitts on suicide watch and failed to ensure his safety. The evidence does not support such a contention.

As stated above, Captain Steenrod did not have any personal interaction with Pitts. To the extent that Plaintiff is asserting a claim for failing to train or supervise, there is nothing in the record to support such a claim. Steenrod testified that there is a jail policy in place with respect to when someone learns that an inmate may be suicidal, and there is a procedure in place for communicating this information to the sergeants. (Ex. 14, pgs. 8-11). Furthermore, the record establishes that the Jail's correction officers go through suicide awareness training, both at the corrections academy and annually at the Lenawee County Jail. (Ex. 8, pgs. 7-8).

Likewise, Lt. Craig was not grossly negligent. When Craig was informed that Pitts said he would kill himself if his case went to trial, Craig contacted Stocker, the Jail's mental health counselor. As a result, Stocker created a plan to ensure Pitts' safety. (Ex. 9). Even after the plan was created, Craig notified Stocker there were concerns that Pitts should be evaluated more immediately due to the suicide threats. (Ex. 9, pg. 2). Stocker, the mental health professional, concluded that Pitts should

23

only be monitored remotely at that time "because no documentation or absolute confirmation has been made that [Pitts] made suicide threats, at this time." (Ex. 9). It was not grossly negligent for Defendants to rely upon Stocker's evaluation and professional judgment. See generally *Jones v. Pramstaller*, 678 F. Supp. 2d 609, 623 (W.D. Mich. 2009)(Just as "supervisory prison officials are entitled to rely on the professional judgment of trained medical personnel," they are also presumptively entitled to rely on the judgment and representations of other subordinates in the areas in which those subordinates are trained and assigned).

The evidence also negates Plaintiff's gross negligence claim against Offier Hart and Stephen Stocker. Officer James Hart passed out a razor to Pitts because his name was on the razor list. (Exhibit 10, pp. 17-18). Officer Hart had absolutely no knowledge that Pitts had ever made any suicidal remarks and had no knowledge that there were any issues regarding Pitts' mental state. (Ex. 10, pp. 18-19, 31). Stephen Stocker developed a specific safety plan of action after he learned of Pitts' conditional suicide threats about going to trial. (ex. 16, p. 86). This plan required that Pitts be placed on suicide watch the day before and the day after any scheduled court appearances. (Ex. 9; Ex. 16, p. 89).  Precautions were placed around any court date, even if it was not a trial date to be on the safe side. (Ex. 16, p. 93). None of this conduct supports a finding of gross negligence.

24

To the extent that Plaintiff is arguing the Defendants failed to follow the old policy regarding razor distribution, evidence of an actor's failure to follow proper procedures or comply with general standards or policies does not create a question of fact regarding gross negligence. See *Rakowski v. Sarb*, 269 Mich. App. 619, 635–636; 713 N.W.2d 787 (2006)(upholding grant of summary disposition where evidence showing ramp was constructed in violation of construction standards and a national building code constituted evidence of ordinary negligence only). See also *Xu v. Gay*, 257 Mich. App. 263, 271; 668 N.W.2d 166 (2003), *Maiden*, 461 Mich. at 125–128. Accordingly, Plaintiff has failed to establish gross negligence, and Defendants are entitled to governmental immunity.

## CONCLUSION

For the foregoing reasons, the Defendants, LENAWEE COUNTY, LIEUTENANT JAMES CRAIG, CAPTAIN DENNIS STEENROD, OFFICER JAMES HART and STEPHEN STOCKER, MSW, respectfully request that this Honorable Court grant their Motion for Summary Judgment pursuant to Fed. R. Civ. P. 56, thereby dismissing the Complaint in its entirety.

Respectfully submitted,

/s/ *James R. Acho*
Cummings, McClorey, Davis & Acho, P.L.C.
33900 Schoolcraft Road, Livonia, MI  48150
(734) 261-2400      Attorneys for Defendants
Email: jacho@cmda-law.com
Dated: March 7, 2016              (P62175)

25

**CERTIFICATE OF SERVICE**

I hereby certify that on March 7, 2016, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record via the Court's e-filing system.

> /s/ *James R. Acho*
> Cummings, McClorey, Davis & Acho, P.L.C.
> 33900 Schoolcraft
> Livonia, MI  48150
> (734) 261-2400
> E-mail: jacho@cmda-law.com
> P-62175

L:\jar - Jen Richards\Pitts\Renewed MSJ.docx

26