UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

Kelly Willey, Personal Representative of
the Estate of Daniel Pitts,　　　　　　　　　Case No. 14-14463

　　　Plaintiff,　　　　　　　　　　　　　　Honorable Nancy G. Edmunds

v.

Lenawee County, et al.,

　　　Defendants.
　　　　　　　　　　　　　　　　　　　／

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [39]**

This matter comes before the Court on Defendants' motion for summary judgment. Plaintiff brings suit on behalf of her decedent son pursuant to 42 U.S.C. § 1983, alleging deliberate indifference to his serious medical needs in violation of the Constitution. For the reasons stated herein, the Court GRANTS Defendants' motion for summary judgment.

**I.　Facts**

This case arises out of the suicide and resulting death of pretrial detainee Daniel Pitts while in custody at Lenawee County Jail. Pitts' mother and personal representative of his estate, Kelly Willey, brings this suit on his behalf.

On January 4, 2013, Daniel Pitts was arrested and brought to Lenawee County Jail. (Dkt. 33, at ¶ 16.) Before processing, Pitts was evaluated at ProMedica Bixby Hospital. (*Id.* at ¶ 17.) The examining doctor recommended further psychiatric evaluation for potential suicide risk. (*Id.* at ¶ 18.) Upon arriving at Lenawee County Jail, Officer Emmons evaluated Pitts and placed him on suicide watch status after Pitts responded "yes" to the questions

"Have you ever attempted or contemplated suicide" and "Are you now contemplating suicide." (Dkt. 42-8.) On January 7, 2013, Pitts was assessed by Lenawee County Jail mental health counselor Stephen Stocker, who determined Pitts presented no suicide risk concerns and accordingly removed him from suicide watch status. (Dkt. 39-6.)

Several months later, Lieutenant James Craig learned that Pitts told another prisoner that he would kill himself if the charges against him weren't dropped and his case went to trial. (Dkt. 39-9, at 18.) On October 16, 2013, Craig notified Stocker, who (that same day) implemented a plan for future precautionary measures. (Dkt. 39-18.) Under the plan, Pitts was to be placed on suicide watch 24 hours before any scheduled court appearances, the first of which was scheduled for November 19, 2013. (*Id.*) While under suicide watch, Pitts would be housed in an isolation cell with at least 30 minute checks lasting until a mental health assessment was completed. (*Id.*) Stocker did not personally assess or interview Pitts at any time after receiving the information from Craig. The next day, on October 17, notes in the jail inmate activity log reflect that Craig and Stocker discussed another Sergeant's concern regarding whether Pitts should be interviewed more immediately due to the alleged suicide threats; Stocker determined, however, the plan need not change. (*Id.*)

On November 8, 2013, Pitts' criminal defense attorney Robert Jameson allegedly had discussions with jail personnel "express[ing] concerns for [Pitts'] health and physical safety." (Dkt. 42, at 14.) Specifically, Jameson states he told two officers that Pitts "was suicidal." (Dkt. 42-12, at 5.) Jameson did not "recall exactly who was on staff," but believed it was Officer Blackman and Officer Lucey. (*Id.*) Plaintiff alleges no action was taken by the jail and the threat was not reported. (Dkt. 33 at ¶ 29.) Plaintiff does not allege, however,

2

that any of the individual Defendants were aware of Jameson's alleged statement to the officers prior to Pitts' suicide.

According to Defendants, shaving razors were passed Sunday through Thursday after lockdown to any inmate who requested a razor. (Dkt. 39, at 13.) All inmates were entitled to request a razor, except those on suicide watch. (*Id.*) On November 12, 2013, Pitts put his name on the razor request sheet. (Dkt. 42-13.) At this time, Pitts was not on suicide watch. At approximately 11:22 p.m. on November 12, Corrections Officer James Hart distributed a razor to Pitts. (Dkt. 33, at ¶ 31.) At approximately 12:09 a.m. Hart went to collect the razor from Pitts' cell and discovered Pitts in the act of harming himself with the razor. (*Id.* at ¶ 34.) A call went out and several individuals responded to Pitts' cell, where he had to be restrained and disarmed by jail staff. (*Id.* at ¶ 35.) He was transported to ProMedica Bixby Hospital, where attempts to resuscitate him failed. (*Id.* at ¶ 36.) Pitts was pronounced dead at 1:10 a.m. due to multiple lacerations to the jugular vessel caused by the razor. (*Id.* at ¶ 37.)

## II. Summary Judgment

It is well established that summary judgment under Federal Rule of Civil Procedure 56 is proper when the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When reviewing the record, "the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *U.S. S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (internal citation omitted)*.* "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

### III. Analysis

#### A. Deliberate Indifference

Plaintiff alleges Defendants acted with deliberate indifference to Pitts' serious medical needs. Where prison officials are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain, they impose cruel and unusual punishment in violation of the Eighth Amendment." *Napier v. Madison Cty., Ky.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal citation omitted). Pretrial detainees are "analogously protected ... under the Due Process Clause of the Fourteenth Amendment." *Id.*

Deliberate indifference requires more than mere negligence; a prison official's state of mind must evince "deliberateness tantamount to intent to punish." *Horn by Parks v. Madison Cty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994). Deliberate indifference includes both objective and subjective components. *See, e.g.*, *Mantell v. Health Prof'ls Ltd.*, 612 Fed. App'x 302, 306 (6th Cir. 2015). The objective component requires proof that the pretrial detainee's medical need is "sufficiently serious." *Id.* It is "well-established in this Circuit that suicidal tendencies are considered 'serious medical needs.'" *Bonner-Turner v. City of Ecorse*, 627 Fed. App'x 400, 407 (6th Cir. 2015) (citation omitted).

For the subjective component, a plaintiff must show: "(1) the prison official subjectively perceived facts from which to infer a substantial risk to the prisoner; (2) the official did in fact draw the inference; and (3) the official disregarded that risk." *Mantell*, 612 Fed. App'x at 306. The subjective component may be satisfied if there is proof "that a prison official drew an inference from the available facts that there was a 'strong likelihood' of prisoner

suicide, but then disregarded that risk by failing to take adequate precautions to mitigate the risk." *Id.* There is no right, however, ensuring that detainees will be correctly screened for suicidal tendencies or protecting a pretrial detainee from committing suicide. *Davis v. Fentress Cty. Tenn.*, 6 Fed. App'x 243, 249 (6th Cir. 2001). "Prison officials need only take reasonable precautions to prevent inmate suicide; they do not insure or guarantee the life of a prisoner." *Galloway v. Anuszkiewicz*, 518 Fed. App'x 330, 334 (6th Cir. 2013). The Court considers each Defendant's actions, in turn.

### 1. Defendant James Hart

As a preliminary matter, Plaintiff does not oppose dismissal of Defendant James Hart, as "it appears he had no knowledge of Daniel Pitts' suicidal remarks in October and November 2013." (Dkt. 42, at 16.) The Court thus dismisses Defendant Hart.

### 2. Defendant Dennis Steenrod

Defendant Dennis Steenrod was the jail commander during the relevant time. (Dkt. 39-15, at 4.) Steenrod testified he had no interaction with Pitts and was not aware of Pitts prior to being notified of his suicide.[1] (*Id.* at 26-27.) Section 1983 liability cannot be based merely on respondeat superior or the right to control employees. *Bonner-Turner*, 627 Fed. App'x at 413. That is, "failure to supervise, control, or train the offending individual is not actionable unless the supervisor either encouraged the specific incident of misconduct or in some other way directly participated in it." *Id.* (internal citation omitted). A plaintiff must

---

[1] Although Stocker's contact note states an email was sent purportedly regarding Pitts' remark and Stocker's assessment to all Sergeants, Craig, and Steenrod (*see* Dkt. 42-10), there is no evidence that Steenrod saw this email or was aware of its contents.

5

at least "show that the official ... implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.*

Here, there is no evidence that Steenrod authorized, approved, or knowingly acquiesced to the conduct of the Defendant officers. Steenrod testified that the first time he heard Daniel Pitts' name was "[t]he night [he] was notified that he had dismantled his razor and then self-harmed." (Dkt. 39-15, at 26-27.) Given this apparent lack of actual knowledge of Pitts and any suicidal remarks made by or about him, Defendant Steenrod "did not—and could not—act with deliberate indifference." *Crocker v. Cty. of Macomb*, 285 F. Supp. 2d 971, 976 (E.D. Mich. 2003).

### 3. Defendant James Craig

Defendant James Craig was the assistant jail commander at all times relevant to this matter. (Dkt. 39-9, at 5-6.) In October 2013, Craig learned Pitts had told a fellow inmate that he would try to harm himself if his case went to trial. (*Id.* at 17-18.) Craig reported this to the mental health counselor, Stocker, on October 16. (Dkt. 33, at ¶ 23.) Stocker's notes state that the next day, Stocker "spoke with [] Craig regarding questions/concerns" about the plan he had implemented the day prior. According to Stocker, Craig notified Stocker that another Sergeant had expressed concerns regarding whether Pitts should be evaluated more immediately. (Dkt. 39-18.) Viewing the facts in the light most favorable to the nonmoving party, it is plausible that a jury could conclude Craig perceived the facts so as to infer a substantial risk that Pitts would try to harm himself.

Deliberate indifference requires, however, not only that the prison official perceive a "strong likelihood" of self-harm, but also "disregard[] that risk by failing to take adequate precautions to mitigate the risk." *Mantell*, 612 Fed. App'x at 306. Even assuming Craig

6

perceived a strong likelihood that Pitts would attempt suicide, no reasonable jury could find that Craig then disregarded that risk. Upon learning that Pitts had threatened to harm himself if his case went to trial, Craig notified Stocker. Craig testified that threats are treated differently, however, if they come directly from the inmate, as compared to if another source provides the tip. (Dkt. 39-9, at 15.) Here, the tip was from a third party. (*Id.* at 25.) Craig provided Stocker with the information, and then discussed Stocker's plan with him. Craig testified that once he put the matter "in Stocker's hands," he "didn't feel that [he] needed to do anything else" because this was Stocker's "sole province." (*Id.* at 22-26.) It was reasonable for Craig to rely on Stocker's judgments in this area. *See, e.g.*, *Graham ex rel. Estate of Graham v. Cty. of Washtenaw*, 358 F.3d 377, 384 (6th Cir. 2004) ("it is not unconstitutional for ... employees to rely on medical judgments made by medical professionals responsible for prisoner care"); *Robbins v. Black*, 351 Fed. App'x 58, 63 (6th Cir. 2009) ("[n]on-medical staff are entitled to assume that members of the medical staff are performing their duties properly unless they have reason to know otherwise"); *Andrews v. Siegel*, 929 F.2d 1326, 1331 (8th Cir. 1991) (prison officials "justifiably relied on" professional judgment of prison psychiatrist" and were not deliberately indifferent to inmate's constitutional rights). No reasonable jury could conclude that Craig was deliberately indifferent to Pitts' serious medical needs.

### 4. Defendant Stephen Stocker

Defendant Stephen Stocker was the mental health counselor for Lenawee County Jail. (Dkt. 39-17, at 6.) Plaintiff argues summary judgment should be denied as to Stocker based on the holding in *Comstock v. McCrary*, 273 F.3d 693 (6th Cir. 2001). (*See* Dkt. 42, at 25.) In *Comstock*, the prison psychologist met with the prisoner, determined he was

suicidal, and placed him on suicide watch; the next day, the psychologist met with the prisoner for under a half hour and concluded he was no longer suicidal and took him off close observational status. The Sixth Circuit emphasized that because the psychologist perceived the prisoner as suicidal when he commenced his evaluation on the second day, it may have been deliberately indifferent to take the decedent off suicide watch after such a short interview and failure to review his entire file. *Comstock*, 273 F.3d at 704.

Here, unlike in *Comstock*, Pitts had not been on suicide watch for over nine months when Stocker learned of Pitts' alleged statement. Moreover, Stocker had *never* previously determined Pitts was suicidal or placed him on suicide watch. When Stocker conducted an evaluation of Pitts in January 2013, after another officer had placed him on suicide watch, Pitts "denied any history of psychiatric diagnosis, treatment, any history of psychiatric hospitalization" and Stocker determined he was not suicidal. (Dkt. 39-17, at 11, 21.) According to Stocker, he understood the "third or fourth removed" information received in October to mean that Pitts may be a suicide risk "potentially in the future." (*Id.* at 17, 24.) Stocker stated he does not treat conditional threats based on an event happening the same way as if someone makes a direct threat of suicide. (*Id.* at 15.) Stocker testified that he did not believe Pitts was immediately suicidal on October 16. (*Id.* at 24.)

Even so, Stocker created a plan to address the information received that same day, including housing Pitts "in an Isolation cell with at least 30 minute checks" starting 24 hours before scheduled court appearances and continuing "until a Mental Health assessment [could] be completed." (Dkt. 39-10.) When questioned whether Pitts should be interviewed sooner, Stocker decided to keep the plan as initially proposed—demonstrating that he did not perceive a "strong likelihood" of an immediate risk of suicide. Viewing the facts in the

8

light most favorable to Plaintiff, no reasonable jury could conclude that Stocker was "cognizant of the significant likelihood that [Pitts] may imminently seek to take his own life." *Galloway*, 518 Fed. App'x at 333.

Even if a reasonable jury could conclude that Stocker subjectively perceived a strong likelihood that Pitts would commit suicide, no reasonable jury could find he then disregarded that risk. Here, Stocker understood that Pitts may be suicidal if his case went to trial. As such, Stocker stated he "put precautions around any times that he was going to go to court"—not just around the date set for his trial—"[j]ust to be on the safe side." (Dkt. 39-17, at 25.) According to Stocker, a face-to-face evaluation was not necessary under the jail's policies. (*See id.* at 14.) Stocker stated he can make an assessment without necessarily "sitting down and doing a face-to-face with" the inmate. (*Id.* at 13.) In hindsight, perhaps Stocker should have conducted a face-to-face assessment of Pitts; at most, however, this error would amount to negligence—not "deliberateness tantamount to intent to punish." *Horn*, 22 F.3d at 660. As the Sixth Circuit has held, "there is no general right of pretrial detainees to be correctly screened for suicidal tendencies" or "to be protected against committing suicide." *Davis*, 6 Fed. App'x at 249. While the plan Stocker put in place did not ultimately prevent Pitts from committing suicide, the Court finds that no reasonable jury could conclude Stocker was deliberately indifferent to Pitts' serious medical needs.

Because the Court holds that Plaintiff has not established a violation of a constitutional right by any of the Defendants, the Court need not reach the issue of qualified immunity. *See Criswell v. Wayne Cty., Ky.*, 165 F.3d 26, 1998 WL 598739, at *2 (6th Cir. 1998) (unpublished opinion).

**B. Municipal Liability**

Plaintiff also claims Defendant Lenawee County was deliberately indifferent to Pitts' constitutional rights by "failing to provide the proper staffing and training at the Lenawee County jail resulting in Daniel Pitts' death by suicide." (Dkt. 33, at ¶ 73.) However, a claim of municipal liability is "inextricably linked" to the claim of officer deliberate indifference: "if the individual defendants have violated no constitutional right, the municipality cannot be liable under § 1983 for failure to train." *Cooper v. County of Washtenaw*, 222 Fed. App'x 459, 473 (6th Cir. 2007). *See also Jones v. Reynolds*, 438 F.3d 685, 698 (6th Cir. 2006) (because "officers did not violate [the plaintiff's] constitutional rights ... any potential derivative liability of the City [is eliminated]."). In light of the Court's conclusions regarding the individual officers, Plaintiff's claim against the County also fails as a matter of law.

### C. State Law Claim

Finally, on December 17, 2014, the Court declined to exercise supplemental jurisdiction over Plaintiff's state law claim for gross negligence so as to avoid jury confusion. (Dkt. 9.) Accordingly, the Court dismissed that claim without prejudice. (*Id.*) When Plaintiff filed her amended complaint on February 16, 2015 she included the same state law claim that this Court had previously dismissed. (Dkt. 33, at ¶¶ 79-85.) For the reasons stated in the Court's December 17, 2013 Order, the Court again dismisses Count IV without prejudice.

## IV. Conclusion

For the above-stated reasons, the Court DISMISSES Defendant Hart, DISMISSES WITHOUT PREJUDICE Count IV of Plaintiff's amended complaint, and GRANTS Defendants' motion for summary judgment on all remaining Counts.

SO ORDERED.

S/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated: May 26, 2016

I hereby certify that a copy of the foregoing document was served upon counsel of record on May 26, 2016, by electronic and/or ordinary mail.

S/Carol J. Bethel
Case Manager